IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| REDONDO WASTE SYSTEM, INC.<br>BIG BLUE CORP.<br>HAYDEE REDONDO-MAYMI<br>ANGEL LUIS PEREZ-RODRIGUEZ<br>Plaintiffs<br><br>vs<br><br>JAVIER J. RUA<br>Executive Director of the Puerto Rico<br>Environmental Quality Board and President<br>of its Governing Board;<br>CARLOS W. LOPEZ-FREYTES, Former<br>Executive Director of the Puerto Rico<br>Environmental quality Board and President<br>of its Governing Board, in his official and<br>personal capacity;<br>ANGEL O. BERRIOS-SILVESTRE,<br>Associate Member of the Governing Board<br>of the Puerto Rico Environmental Quality<br>Board, in his official and personal capacity;<br>EUGENE P. SCOTT-AMY, Vice-President<br>of the Governing Board of the Puerto Rico<br>Environmental Quality;<br>JULIO IVAN RODRIGUEZ-COLON,<br>Manager of the Land Program of the Puerto<br>Rico Environmental Quality board and<br>Alternate Member of its Governing Board,<br>in his official and personal capacity<br>Defendant | CIVIL 08-2314CCC |

## OPINION AND ORDER

This action, filed pursuant to 42 U.S.C. §1983, alleges violations of plaintiffs' civil rights in the form of intentional, discriminatory actions and omissions taken against plaintiffs Redondo Waste Systems, Inc. (Redondo) and Big Blue Corp. (BBC), jointly referred to by the parties as "Celsius." Haydee Redondo-Maymí is the president of Redondo and Vice President of BBC. Plaintiff Pérez-Rodríguez is married to Redondo-Maymí and is a stockholder in both companies. Now before us is defendants' Motion to Dismiss Pursuant [to] Rule 12 (b)(6) of the Federal Rules of Civil Procedure (**docket entry 14**), which plaintiffs opposed (docket entry 18).

CIVIL 08-2314CCC                                              2

## Factual Background

The two corporate defendants, which are engaged in the business of regulated biomedical waste (RBW) disposal, allege that defendants, who are members and officers of the Puerto Rico Environmental Quality Board (EQB), the entity that regulates Redondo and BBC's activities, were responsible for the discrimination against them. The complaint contains a recitation of alleged events going back more than two decades. Plaintiffs initially aver that the EQB's retaliation against them began after Redondo-Maymí's cooperation in 1988 with an investigation of agency employees that resulted in the filing of criminal indictments. It is alleged that "EQB employees began an inquisitorial, unconstitutional, unlawful pattern of hostile administrative actions geared towards the closing of Celsius' operations." Complaint, ¶2.

Plaintiffs further aver that the EQB has acted in a manner that has favored plaintiffs' competitor, Stericycle, in violation of the Equal Protection Clause of the Fourteenth Amendment, ¶4, and that defendants have conspired against Celsius with others, including Stericycle's legal representatives, to benefit Celsius' competitors, ¶5;

Plaintiffs also contend that

> Defendants' retaliatory actions against the plaintiffs increased in proportion to Dr. Redondo's growing insistence that Stericycle be investigated and processed for its decade long failure to destroy their RBW. Dr. Redondo's complaints are statements regarding matters of public concern, to wit: continued irregularities in the EQB against her corporations and in favor of Stericycle; and the corrupt practices of EQB personnel.

Complaint, at ¶7.

The other event on which plaintiffs base their claim of retaliation is said to have occurred in 2001, when Redondo-Maymí "filed a complaint at the EQB against Celsius' Competitor BFI Medical Stericycle." ¶3.

As to more current events, plaintiffs aver that on August 29, 2006 Inspector María del los Angeles Ortiz of the Land Contamination Control Program threatened to fine the L&M

CIVIL 08-2314CCC                                      3

Waste's Yauco landfill operator if it received processed waste from Celsius. The landfill operator complied with the prohibition, which plaintiffs characterize as ". . . resulting in the constructive cancellation of Celsius' operating permit without a hearing required by due process of law." (¶ 30.) It is also averred that, by November 6, 2006, the EQB issued Administrative Order No. OA-06-TE-212 which included a Cease and Desist Order directing Celsius to: "(a) Stop collecting RBW, following Celsius' Operating Plan which stated that waste could not be collected after seven days with broken down equipment; (b) Select an alternate facility for the destruction of its waste; (c) Proceed to treat the accumulted RBW at the facility." Complaint, ¶ 43.

Plaintiffs further contend that defendants "revoked and canceled their permits without a pre-deprivation hearing, in violation of the Fourteenth Amendment's due process clause." Complaint, ¶ 38, delayed certifications ¶ 52, failed to act on plaintiffs' request for a waiver (¶ 54) as well as other actions or delays in taking actions, for the purported purpose of sabotaging plaintiffs' efforts to comply with the order and ultimately resulting in the EQB's constructive closing of Celsius, to the benefit of its competitors, Western Medical and Stericycle (¶¶ 63-64).

Defendants arver that the §1983 claims must be dismissed because plaintiffs have failed to establish the requisite causal connection between acts attributed to the defendants and plaintiffs' alleged damages. They also claim Eleventh Amendment immunity in their official capacities and qualified immunity in their personal capacities.

Most of the arguments in defendants' motion addresses the individual defendants lack of causes of action and their lack os standing to sue, and the Eleventh Amendment bar to suit against the defendants in their official capacity. Redondo-Maymí and Pérez-Rodríguez have acquiesced to defendants' reasoning and have accepted their lack of standing to sue in this action: "the individual plaintiffs, as stockholders of the corporate [plaintiffs] have no

CIVIL 08-2314CCC                                      4

standing to sue on their own for the damages suffered by its (sic) corporations; therefore, the complaint will be amended to eliminate the individual plaintiffs." Plaintiffs' Opposition, at 10.

> Plaintiffs accept that Plaintiffs' claims for money damages against the individual defendants in their official capacity are barred by the Eleventh Amendment. A review of the complaint did not reveal a claim for equitable relief that would justify the suit against the defendants in their official capacity. The complaint will be amended to eliminate claims against individual defendants in their official capacity.

Id., at p. 3.

Plaintiffs having failed to tender the amended complaint to which they refer, the Court will dismiss all claims brought by the individual defendants, Redondo-Maymí and Pérez-Rodríguez, and all claims against defendants in their official capacities. For this reason, we go directly to defendants' request for their dismissal in their personal capacities with regard to Celsius' claims of retaliation–denial of due process in the purported revocation of permits and refusal to issue permits, as well as the equal protection claims alleging favored treatment of plaintiffs' competitors.

**Motion to Dismiss Standards**

With regard to the corporate defendants, we must now consider whether the allegations of the complaint are enough to state a claim for relief under said statute.

> . . . the pleading standard [of Fed.R.Civ.P. 8] announces does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). But "the tenet that

CIVIL 08-2314CCC							5

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Maldonado v. Fontanés, 568 F.3d 263, 268 (1st Cir.2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, at 1949.

Thus, we must conduct our analysis by first identifying the allegations of the complaint that are no more than legal conclusions, which are not to be considered, and then zero on the well-pleaded nonconclusory factual allegations to determine whether they, by itself, plausibly give rise to an entitlement to relief. Having done so, we conclude that the complaint before us has failed to bring plaintiffs' federal claims against the defendants "across the line from conceivable to plausible." Twombly, at 1955.

**Analysis**

Section 1983 requires three elements for liability: state action, deprivationof a right and a causal connection between the actor and the deprivation. 42 U.S.C. §1983. We first identify the alleged role of each defendant to determine if the complaint alleges actions taken under color of state law. The complaint avers the following:

**López-Freytes** is identified as having been the Executive Director of the EQB and president of its Governing Board. It is alleged that he acted under color of law. (¶ 17.)

> 18. Co-defendant López Freytes is jointly and severally liable with his subordinates to the Plaintiffs <u>for his failure to properly supervise codefandants EQB personnel in this case,</u> where their actions and/or omissions were the proximate cause of the constitutional injury suffered by plaintiffs at the hands of his subordinates. Co-defendant López Freytes had direct and/or constructive knowledge by others and was advised in writing by Plaintiffs of their constitutional rights being endangered and then injured by his subordinates, and yet failed to take action to

CIVIL 08-2314CCC                                    6

> prevent them, when he had a legal duty to do so. Co-defendant López Freytes failure to act has amounted to callous, reckless, or deliberate indifference to the constitutional rights or plaintiffs.

(Our emphasis.)

In ¶19, defendant **Angel Berrios-Silvestre** is identified as an Associate Member of the Governing Board of the EQB and avers that 'he acted under color of law in enforcing Puerto Rico and federal environmental laws." Paragraph 20 describes defendant **Eugene P. Scott Amy** as

> an attorney at law, and the Vice-President of the EQB Governing Board of the EQB as a member of the Board, he acted under color of law enforcing Puerto Rico and federal environmental laws. Mr. Scott Amy worked for the EQB as legal counsel to the Governing Board, worked with the law firm that before joining BFI/Stericycle's law firm of Torres & García. After some time, Mr. Scott Amy returned to the EQB as Vice President of the Governing Board. Since his resignation to the law firm of Torres & García (sic) co-defendant has and continues to have a strong friendship and ties to the partners and associates of said law firm. Stericycle was at all times relevant (sic) Celsius' main competitor.

(Paragraph 20.)

There are no specific factual allegations as to either Berrios-Silvestre or Scott-Amy.

Paragraphs 21 through 25 identify defendant **Julio Iván Rodríguez-Colón**, Manager of the Land Program of the Puerto Rico Environmental Quality Board and an Associate Member of its Governing Board who also acted under color of law in enforcing Puerto Rico and federal environmental laws. He is described as the supervisor of María de los Angeles Ortiz and María Janice Sostre-Rivera and is himself "directly or indirectly"[1] supervised by López-Freytes. It is alleged that Rodríguez and López-Freytes are liable for failing to properly supervise their subordinates in this case, "where their actions and or omissions were the proximate cause of the constitutional injury suffered by plaintiffs at the hands of his subordinates."

---

[1] Complaint, ¶18.

CIVIL 08-2314CCC						7

Paragraph 22 contains the same generic conclusion of fact as to Rodríguez' role that is found in the description of López-Freytes.  That is, that Rodríguez-Colón

> had direct and/or constructive knowledge by others and was advised in writing by Plaintiffs of their constitutional rights being endangered and then injured by his subordinates, and yet failed to take action to prevent them, when he had a legal duty to do so. Co-defendant Julio Iván Rodríguez failure to act has amounted to callous, reckless, or deliberate indifference to the constitutional rights or plaintiffs.

Paragraph 23 identifies Rodríguez-Colón as being "directly liable to the Plaintiffs for, among other actions, his wrongful refusal to issue a written authorization enabling the Plaintiffs to dispose sterilized and destroyed RBW in EQB authorized landfills."  Paragraph 24 conclusorily states that

> Rodríguez along with EQB 's co-defendants and Members of the Board conspired to deprive the Plaintiffs of their constitutional rights and grant BFI/Stericycle rights and privileges and preferential treatment described below in this complaint.

In order for a claim to be cognizable under §1983, a plaintiff must plead and prove three elements of the cause of action: first, that the defendant acted under color of state law; second, that plaintiff was deprived of federally-protected rights, privileges or immunities; and third, that the defendant's alleged conduct was causally connected to the plaintiff's deprivation.  <u>Gutiérrez-Rodríguez v. Cartagena</u>, 882 F.2d 553, 558 (1st Cir. 1989).

While the first element, state action, is satisfied as to three principal defendants, plainitffs do not aver if Scott-Amy was a state officiail, and, if so, when or was merely an outside consulting attorney.  In fact, one can infer that, at the time of the actionable alleged events,[2] Scott-Amy was either employed by the law firm that represneted BFI/Stericycle, or merely continued to have "a strong friendship and ties to the partners and associates of said law firm."

---

[2] Plaintiffs' complaint relates incidents dating back to 1991.

CIVIL 08-2314CCC                                        8

    The second element, deprivation of a federally-protected right, is alleged to be based ont he supervision of EQB Inspector Ortiz and the acts, or failure to act of the EQB.  The only specific factual allegations as to **any** individual defendant recited in the complaint, at ¶ 29, actually undermines plaintiffs' claim of a deprivation:  Plaintiffs allege that in late 2003, as a result of problems with their equipment used to process RBW, they sought, and <u>were granted by co-defendant Rodríguez-Colón</u>, a modification of Celsius' operating plan which would allow them to use a thermal method of destruction of its RBW:[3] "Since February 9, 2004 Celsius was allowed by EQB to operate according to Celsius' Modified Operating Plan, approved by co-defendant, Mr. Julio Iván Rodríguez."  (¶ 44.)[4]  The only factual allegation of an adverse action by a named indidual is raised against inspector María de los Angeles Ortiz, who allegedly threatened to fine the Yauco landfill operator if it accepted more waste from Celsius,[5] and she is not a defendant.

    Even if we were to determine that the factual allegations are sufficient to configure Fourteenth Amendment due process and equal protection violations, plaintiffs have, nonetheless, failed to establish the required causal connection between movants  Rua,

---

    [3]We note Rodríguez-Colón's waiver was necessitated by a problem with Celsius' shredding equipment used for destruction of its RBW.  Inspector Ortiz' alleged involvement in stopping the continued disposal at the Yauco landfill is said to have occurred almost three years later after the modification was authorized.

    [4] The only other mention of a specific defendant is found in the conclusory, subjective statement in ¶ 62: "Immediately after this Order, co-defendant Carlos López-Freytes utilized the media to threaten Celsius' clients with fines if they disposed of their RBW with Celsius."

    [5]    30. On August 29, 2006, EQB 's Inspector, María de los Angeles Ortiz, with the Land Contamination Control Program, threatened to fine the L&M Waste's Yauco landfill operator, if they received processed waste from Celsius. The landfill operator refused to receive any more from Celsius on September 5, 2006, thus resulting in the constructive cancellation of Celsius's operating permit without a hearing required by due process of law by ordering the Yauco landfill to stop receiving Plaintiffs waste.

CIVIL 08-2314CCC                              9

Berrios-Silvestre, Scott-Amy, López-Freyetes, and Rodríguez-Colón and alleged violations and purported damage. "Because vicarious liability is inapplicable to . . . §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, at 1948. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id. at 1949. See also, Maldonado-Fontanés, 568 F.3d 263 (1st Cir. 2009).

Aside from the fact of Rodríguez' approval of the modification, the narration of facts in the complaint rely on the generic "defendants." Where "defendants" are mentioned, it is as a group; i.e., ¶38, plaintiffs refer to "Defendants and other EQB personnel . . ." or ¶39 where they twice refer to "Defendants and the EQB...."

It is evident from the face of the complaint that plaintiffs' grievances are alleged civil rights violations by the EQB itself, an agency of the Puerto Rico government and not the individual defendants in this suit. For example:

¶31: "EQB 's actions of halting Celsius' waste disposal at the Yauco landfill, contrast starkly with that Agency's preferential treatment of Celsius' competitor...." and "EQB knew...." and "Furthermore, EQB never intervened...."

¶¶32 and 33: Each paragraph begins with the phrase, "EQB 's actions of ordering the closing of the landfill to Celsius...."

¶34 ". . . EQB in representation of the EQB (sic) authorized Stericycle to dispose in the Humacao landfill."

¶35 " . . . EQB inspectors never gave Stericycle a notice of violation...."

¶36 "EQB 's decision to halt Celsius' disposal...."

¶37 "EQB inspectors' verbal order to close the landfill to Celsius...."

¶39 "The absence of even a perfunctory inspection of Stericycle's RBW treatment facilities during those ten years reflects EQB s' preferential treatment policy...."

¶45 "Again, the EQB failed to adhere to its own rules and record of decision."

CIVIL 08-2314CCC						10

¶48 "These <u>actions by EQB are tantamount to the Agency engaging in an act of sabotage</u> to derail Celsius from complying with the aforementioned Administrative Order."

The bottom line is that the complaint's focus is **not** on the actions of the individual defendants. Plaintiffs' bone of contention is laid on the agency's doorstep: "<u>Celsius has been subject to intentional discriminatory actions and omissions by the EQB</u> from others similarly situated that have favored their competitors." (§41.) (Our emphasis.) In sum, the allegations of the complaint provide no foundation of concrete facts that would link each defendant personally to any alleged violations. <u>See</u>, <u>Iqbal</u>, at 1848 (plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution); <u>see also</u>, <u>Rizzo v. Goode</u>, 423 U.S. 362, 371-72 (1976) (a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant).

While we cannot say that plaintiffs' complaint does not show "a possibility that someone acted unlawfully," this is not enough under the revised pleading standards. Instead, there must be factual allegations sufficient to rise above the "speculative to rise above the "speculative level" or the "merely possible or conceivable." Twombly, 550 at 557, 570, which are absent in this complaint.

For the above-stated reasons, inasmuch as plaintiffs' complaint does not plead any facts that would state a claim against the individual defendants, the Motion to Dismiss Pursuant [to] Rule 12 (b)(6) of the Federal Rules of Civil Procedure (**docket entry 14**) is GRANTED. Judgment will enter dismissing this action.

SO ORDERED.

At San Juan, Puerto Rico, on March 31, 2010.

               S/CARMEN CONSUELO CEREZO
                United States District Judge